**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AUGUST CABRERA, *et al.*, | |
| Plaintiffs, | |
| v. | Case No. 19-cv-3833-EGS-ZMF |
| BLACK & VEATCH SPECIAL PROJECTS CORPORATION, *et al.*, | JURY TRIAL DEMANDED |
| Defendants. | |

## PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY

Plaintiffs submit this Notice of Supplemental Authority to inform the Court of two recent JASTA decisions from the Second and Ninth Circuits. *See Kaplan v. Lebanese Canadian Bank, SAL*, --- F.3d ----, 2021 WL 2345642 (2d Cir. June 9, 2021) (Exh. B); *Gonzalez v. Google LLC*, - -- F.3d ----, 2021 WL 2546675 (9th Cir. June 22, 2021) (Exh. C). Those decisions nullify wide swaths of Defendants' motions to dismiss. They directly overrule two district-court cases that Defendants' briefs invoke more than 50 times.[1] *Kaplan* functionally abrogates two more district-court cases – cited by Defendants nearly 50 times[2] – that apply the same flawed reasoning the Second Circuit reversed. And *Kaplan* authoritatively construes two prior Second Circuit JASTA opinions – cited by Defendants more than 125 times[3] – and rejects Defendants' interpretation of them. *Compare Kaplan* at *12-16 (construing *Linde* and *Siegel*) *and* Dkt. 119 ("Dev. Opp.") at

---

[1] *Kaplan v. Lebanese Canadian Bank, SAL*, 405 F. Supp. 3d 525 (S.D.N.Y. 2019) (reversed by *Kaplan*); *Taamneh v. Twitter, Inc.*, 343 F. Supp. 3d 904 (N.D. Cal. 2018) (reversed by *Gonzalez*). *See also* Exh. A (chart collecting Defendants' secondary-liability citations).

[2] *Averbach v. Cairo Amman Bank*, 2020 WL 486860 (S.D.N.Y. Jan. 21, 2020); *Honickman ex rel. Goldstein v. BLOM Bank SAL*, 432 F. Supp. 3d 253 (E.D.N.Y. 2020). *See also* Exh. A.

[3] *Linde v. Arab Bank, PLC*, 882 F.3d 314 (2d Cir. 2018); *Siegel v. HSBC N. Am. Holdings, Inc.*, 933 F.3d 217 (2d Cir. 2019). *See also* Exh. A.

73-75, 84-85 (same) *with* Exh. A (Defendants' cites).[4]  These decisions together shred virtually every aiding-abetting argument that appears in Defendants' motions.  Each is discussed below.

## I.     **The Second Circuit's *Kaplan* Opinion**

In *Kaplan*, the Second Circuit vacated the dismissal of JASTA aiding-abetting claims brought by Hezbollah terror victims against Lebanese Canadian Bank, which provided banking services to Hezbollah's intermediary "subordinate entities."  2021 WL 2345642 at *1, *4-5.  The court thoroughly examined JASTA's requirements and its own previous applications of the statute in *Linde* and *Siegel*.  *Id*. at *9-16.  It rejected every key proposition that Defendants attempt to derive from those decisions (and from the *Kaplan* district-court decision):[5]

- The Second Circuit held that JASTA does *not* require a defendant to support terrorists directly.[6]  Instead, it reaches defendants whose "substantial assistance was given to an intermediary."  *Kaplan* at *11.  Assistance thus can be "substantial" whether given "directly to [terrorists] or indirectly" through intermediaries.  *Id*. at *19.

- The Second Circuit also held that JASTA does *not* require a defendant to "inten[d] to further terrorist activity."  *Id*. at *13.[7]  Instead, a defendant need only have been generally "'aware' that it was playing a role in terrorism."  *Id*. at *14.  General awareness is "something less than full, or fully focused, recognition."  *Id*. at *17.  It "need not include proof of the defendant's 'specific intent,' as would be required to prove a crime."  *Id*. at *14.  Nor does the substantial-assistance element require such intent:  the substantiality of a defendant's assistance does not turn on whether a defendant "intentionally supported [terrorists]" or acted "pursuant to [the terrorists'] agenda."  *Id*. at *19.

---

[4] *Contra, e.g.*, Dkt. 123 ("LBG Rep.") at 9 n.2 (misconstruing *Linde*); Dkt. 125 ("DAI Rep.") at 23 (same); Dkt. 127 ("Chemonics Rep.") at 23 (same); Dkt. 105-1 ("Centerra/G4S Br.") at 45, 47 n.13 (misconstruing *Siegel*); Dkt. 107-1 ("DAI Br.") at 43 & n.8 (same); Dkt. 111-1 ("Chemonics Br.") at 38-39 (same).

[5] Indeed, most Defendants identified *Linde*, *Siegel*, or the *Kaplan* district-court decision – or some combination of them – as authorities on which they chiefly relied.  *See* Centerra/G4S Br. at vii-viii (*Linde*, *Siegel*); Chemonics Br. at v (*Linde*); Dkt. 102-1 ("MTN Br.") at v-vi (*Linde*, *Siegel*); Dkt. 109-1 ("Janus Br.") at v-vi (*Linde*, *Siegel*); Dkt. 110-1 ("ECC Br.") at v (*Siegel*); Dkt. 135 ("ECC Rep.") at iii (*Kaplan*, *Linde*); Dkt. 104-1 ("IRD Br.") at v (*Linde*, *Siegel*).

[6] *Contra* Centerra/G4S Br. at 45; Chemonics Br. at 34 & n.36; Chemonics Rep. 20-21; DAI Br. at 43; ECC Br. at 42.

[7] *Contra* DAI Br. at 44-45 & n.9; ECC Br. at 42; IRD Br. at 31; Janus Br. at 37; Dkt. 103-1 ("LBG Br.") at 29-30; Dkt. 124 ("MTN Rep.") at 23-25.

- The Second Circuit likewise rejected the argument that a defendant must support the specific attack that injured the plaintiff. *See id*. at *19.[8]  Instead, a defendant need only knowingly provide assistance to the terrorist group that carried out the attack.  *See id*. This does not require a direct link between the aid and an individual attack; it merely requires a defendant to be "generally aware of its role in an overall illegal activity from which an act of international terrorism was a foreseeable risk."  *Id*. at *14 (internal quotation marks omitted).

In reaching those holdings, *Kaplan* rejected Defendants' view of *Linde*.  *Kaplan* explained that *Linde*'s distinction between aiding-abetting and material support, *see* 882 F.3d at 329 – invoked repeatedly by Defendants here – was tied to the procedural posture of that case. *See Kaplan* at *12-15.  The jury in *Linde* found for the plaintiffs after being instructed erroneously on *primary liability* under § 2333(a).  *Id*. at *12.  The Second Circuit held that instruction was error, but between the trial and the appeal JASTA had become law.  *Id*.  As a result, the sole "JASTA-related question" in *Linde* "was whether the availability of that aiding-and-abetting claim made the instructional error on the ATA claim one that was harmless."  *Id*.

As *Kaplan* explained, the answer to that question says little about what it takes to plead an aiding-abetting claim.  *Id*.  After all, an aiding-abetting claim was never pleaded in *Linde*, and the jury was never instructed on it.  Thus, *Linde*'s statement that aiding-abetting

> "requires *more than* the provision of material support to a terrorist organization," does not establish that material support to an FTO is never sufficient for aiding-and-abetting liability.  Instead, that statement articulates the principle that knowingly providing material support to an FTO, without more, does not as a matter of law satisfy the general awareness element.  Whether a defendant's material support to an FTO suffices to establish general awareness is a fact-intensive inquiry."  *Id*. at *14 (emphasis in *Kaplan*) (internal citation omitted).

---

[8] *Contra* Centerra/G4S Br. at 42-44; Chemonics Br. at 35-36; ECC Br. at 40-41; ECC Rep. at 20, 23-24 & n.28; IRD Br. at 35-36; Janus Br. at 34-35; LBG Br. at 26-27, 30; LBG Rep. at 15; MTN Br. at 40-42; MTN Rep. at 23-24; Dkt. 126 ("IRD Rep.") at 18; Dkt. 134 ("Janus Rep.") at 18 n.25.

That is the same reading of *Linde* Plaintiffs have advanced here, and the Second Circuit has now confirmed Defendants' error in portraying *Linde* as announcing a pleading requirement. *See* Dev. Opp. at 84-85.  Indeed, after rejecting Defendants' view of *Linde*, *Kaplan* reinstated the plaintiffs' claims alleging that the defendant bank was secondarily liable for providing indirect financial support to Hezbollah.  *Kaplan* at *19.  This Court should thus reject Defendants' assertions that Plaintiffs cannot state a claim under *Linde* by alleging material support to the Taliban,[9] as well as Defendants' insistence that *Linde*'s posture was irrelevant to its reasoning.[10]

The Second Circuit's explanation of its own *Linde* precedent also abrogates *Averbach* and *Honickman* – two more decisions within that Circuit that misinterpreted *Linde* in the same way as the *Kaplan* district court.  Defendants cite those cases too for the same discredited positions noted above:  that only direct payments to terrorists are enough,[11] that a defendant must desire terrorist attacks,[12] and that a defendant must fund specific attacks rather than a broader terrorist enterprise.[13]  The Court should reject these arguments, just as *Kaplan* did.  *Averbach*'s statement – repeated by Defendants[14] – that *Kaplan*'s district-court ruling was "in keeping with the trend in JASTA case law," 2020 WL 486860, at *12, illustrates just how far Defendants'

---

[9] *See* Centerra/G4S Br. at 42; Centerra Rep. at 18, 24; Chemonics Br. at 35-36; Chemonics Rep. at 23; ECC Rep. at 20, 24 n.28; IRD Br. at 34-35; IRD Rep. at 10; Janus Br. at 2-3, 35; Janus Rep. at 18 n.25; LBG Br. at 26; MTN Br. at 39 n.15, 41; Dkt. 106-1 ("B&V Br.") at 14 n.48.

[10] *See* Chemonics Rep. at 23; DAI Rep. at 23; LBG Rep. at 9 n.2.

[11] *See* Chemonics Rep. at 19; DAI Br. at 43; ECC Br. at 39; ECC Rep. at 21 & n.24; MTN Br. at 41.

[12] *See* IRD Br. at 37 n.123; IRD Rep. at 13 n.4; MTN Br. at 44; MTN Rep. at 23-24.

[13] *See* Centerra/G4S Br. at 43; Chemonics Br. at 36; ECC Br. at 40-41; ECC Rep. at 23-24 & n.28; IRD Br. at 30 n.100, 35 n.118; IRD Rep. at 10; LBG Br. at 26-27; MTN Br. at 41-42.

[14] DAI Br. at 43; ECC Br. at 39; ECC Rep. at 21 n.24.

position (and the abrogated cases they base it on) departs from the statute.[15]  That so-called

"trend" is no more, and Defendants' reliance on it confirms that their motions should be denied.

Finally, the Second Circuit also addressed its prior decision in *Siegel*.  *Siegel*, like

*Kaplan*, involved aiding-abetting claims against a bank for providing financial services.  *See*

*Kaplan* at *15.  The defendant in *Siegel* did business with another bank, and when the defendant

learned that the other bank had terrorist customers, it terminated the relationship.  *See id*. at *16.

Moreover, *Siegel* lacked any allegations that the defendant knew "the funds they forwarded for

[the other bank] would be sent to [al-Qaeda in Iraq] or to any other terrorist organizations."  *Id.*

The defendant in *Kaplan*, in contrast, worked with terrorist intermediaries, and it ignored reports

that its conduct was indirectly supporting Hezbollah.  *See id*.  The *Kaplan* allegations thus stated

a claim even though those in *Siegel* did not.  *See id*.  Defendants here fall easily on the *Kaplan*

side of those distinctions.  *See* Dev. Opp. at 7-12, 73-75, 79-81.

## II.   The Ninth Circuit's *Gonzalez* Opinion

In *Gonzalez*, the Ninth Circuit reversed the dismissal of aiding-abetting claims brought

by relatives of an ISIS terror victim against Google (owner of YouTube), Twitter, and Facebook,

alleging that they permitted ISIS to use their services to recruit members and spread propaganda.

*See* 2021 WL 2546675, at *5.  The Ninth Circuit joined the Second Circuit in holding that a

JASTA defendant need not intend to further terrorism, and need support only the terrorists'

overall enterprise rather than any individual attack.  *See id*. at *28 ("the act encouraged is ISIS's

terrorism campaign"), *29 ("the Taamneh Plaintiffs do not allege that defendants had any intent

to further or aid ISIS's terrorist activities").  The court held that the plaintiffs had stated a claim

even though the defendants "regularly" removed some ISIS accounts and content, because they

---

[15] IRD noted *Averbach* as an authority on which it chiefly relied.  *See* IRD Br. at iii.

also allowed other ISIS content to remain online "even after receiving complaints." *Id* at *29. The court also sustained the claim despite the social-media companies' lack of physical presence and their purely commercial relationship with the terrorists. *See id*.

In so doing, *Gonzalez* reversed the main district-court decision, *Taamneh*,[16] that Defendants cite to argue that Plaintiffs must plead that Defendants were "one in spirit" with terrorists[17] and that their support individually funded each attack at issue.[18]  As both the Second and Ninth Circuits have now held, Defendants are wrong to claim that the absence of such allegations can justify dismissal.  Indeed, virtually every Defendant relies on *Taamneh* to argue that Plaintiffs' allegations are "plainly deficient" because, supposedly, assisting "a terrorist organization's 'general course of conduct' does not amount to 'substantial assistance' to a particular terrorist act." *E.g.*, Chemonics Br. 35 (quoting *Taamneh*, 343 F. Supp. 3d at 916). The Ninth Circuit now has reversed *Taamneh* on that very point. *See Gonzalez* at *24, 28.

Reviewing a different district-court decision, the *Gonzalez* court also affirmed dismissal of primary liability and aiding-abetting claims under the ATA.  In that case, the plaintiffs alleged that Google shared advertising revenue with ISIS, consistent with its standard practice for users posting YouTube videos. *See id*. at *4, *18.  The Ninth Circuit held those plaintiffs had adequately pleaded the general-awareness element – by funding ISIS, Google "was generally aware of its role in ISIS's terrorist activities," *id.* at *23 – and that they "adequately allege[d]

---

[16] Several Defendants relied chiefly on *Taamneh*.  *See* ECC Br. at v; Janus Br. at vi; MTN Br. at vii.  Black & Veatch also places great weight on this now-reversed decision, criticizing Plaintiffs for "not respond[ing]" to *Taamneh* and then using it to assert that there can be no "secondary liability for the mere act of providing general support to an FTO, untethered from a specific act." Dkt. 130 ("B&V Rep.") at 24.

[17] DAI Br. at 44-45 & n.9; IRD Rep. at 13-14; Janus Br. at 37-38 & n.28: LBG Br. at 29-30; LBG Rep. at 18-19.

[18] *See* Centerra/G4S Br. at 42; Chemonics Br. at 35; DAI Br. at 38-39; Janus Br. at 35; MTN Br. at 43.

knowing assistance," *id.* at *25.  But the court held they had failed to plead *substantial*
assistance, and thus aiding-abetting, because the complaint was "devoid of any allegations about
how much assistance Google provided."  *Id.* at *26.  Here, in contrast, Plaintiffs allege the value
of Defendants' bribes to the Taliban.  *See* Dkt. 82 ("FAC") ¶¶ 92, 147, 149, 182, 184, 217, 219,
230, 232, 247, 249, 294, 307.

As for the primary liability claims, the Ninth Circuit held that Google's ordinary, arm's-
length commercial transactions did not "appear to be intended" to support terrorist ends, as
required for primary liability by 18 U.S.C. § 2331(1)(B).[19]  The *Gonzalez* court noted that
Google's normal-course revenue sharing was "easily distinguished from [allegations] involving
donations to a known terrorist organization," like those upheld in *Boim v. Holy Land Found. for
Relief & Dev.*, 549 F.3d 685 (7th Cir. 2008) (en banc) (Posner, J.).  2021 WL 2546675, at *21.
Defendants' conduct here is far closer to donations to the Taliban than to ordinary transactions.
Defendants' commercial activities are development, security services, and telecommunications.
*See* FAC ¶¶ 147, 182, 217, 230, 247, 286.  Defendants did not simply offer their services to
terrorists on the same basis as other customers, as Google allegedly did in *Gonzalez*.  Instead,
Defendants bribed the Taliban to attack other targets rather than their own projects, and MTN
interfered with its own customers' cellular service at the Taliban's request.  *See* FAC ¶¶ 148-68,
183-212, 218-228, 231-243, 248-279, 291-321.  This is the sort of gratuitous support – in cash

---

[19] *Gonzalez* quoted *Linde*'s statement that "the provision of material support to a terrorist
organization does not invariably equate to an act of international terrorism."  2021 WL 2546675,
at *20.  *Gonzalez* was issued less than two weeks after *Kaplan*, and it appears that the *Gonzalez*
court was not aware of the Second Circuit's clarification of *Linde* in *Kaplan*.  To the extent
*Gonzalez*'s rejection of primary-liability claims relied on a misunderstanding of *Linde*, that result
is undermined by *Kaplan*.  *See also Gonzalez* at *43-44 (Gould, J., dissenting) (explaining
persuasively why the primary-liability claims there should have been reinstated).

and, in MTN's case, in kind – that the *Gonzalez* court acknowledged appears to be intended to support terrorist aims.  *See also* Dev. Opp. at 61-66.

Dated:  July 2, 2021

                                        Respectfully submitted,

                                        */s/ Joshua D. Branson*

Michael J. Gottlieb (D.C. Bar No. 974960)       Joshua D. Branson (D.C. Bar No. 981623)
Randall Jackson (D.C. Bar No. 490798)           Andrew E. Goldsmith (D.C. Bar No. 1007074)
Nicholas Reddick (D.C. Bar No. 1670683)         Grace W. Knofczynski (D.C. Bar No.
Willkie Farr & Gallagher LLP                    15000407)
1875 K Street, N.W.                             Kellogg, Hansen, Todd,
Washington, DC 20006-1238                         Figel & Frederick, P.L.L.C.
Tel: (202) 303-1000                             1615 M Street, N.W., Suite 400
Fax: (202) 303-2000                             Washington, D.C. 20036
MGottlieb@willkie.com                           Tel:  (202) 326-7900
RJackson@willkie.com                            Fax:  (202) 326-7999
NReddick@willkie.com                            jbranson@kellogghansen.com
                                                agoldsmith@kellogghansen.com
                                                gknofczynski@kellogghansen.com

                                                Ryan R. Sparacino (D.C. Bar No. 493700)
                                                Sparacino PLLC
                                                1920 L Street, NW, Suite 535
                                                Washington, D.C. 20036
                                                Tel:  (202) 629-3530
                                                ryan.sparacino@sparacinopllc.com

                                                *Counsel for Plaintiffs*