UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AUGUST CABRERA, *et al.*,

    Plaintiffs,

v.

BLACK & VEATCH SPECIAL PROJECT CORPORATION, *et al.*,

    Defendants.

Civil Action No. 19-3833 (LLA)

## MEMORANDUM OPINION AND ORDER

In December 2019, U.S. citizens killed or injured by terrorist attacks in Afghanistan brought this suit against seventeen corporate entities under the Antiterrorism Act of 1992, 18 U.S.C. § 2333(a) (the "ATA").[1] ECF No. 1; ECF No. 82. In short, Plaintiffs allege that Defendants violated the ATA by supporting the Taliban and other terrorist groups in order to protect or further their corporate business interests. *Id.* ¶ 1. Plaintiffs now move for leave to file a Second Amended Complaint. ECF No. 171. Most Defendants do not oppose this motion. ECF No. 172. Three defendants, MTN Group Limited, MTN (Dubai) Limited, and MTN Afghanistan—collectively, the "MTN Defendants"—object to Plaintiffs' addition of a new theory of liability: the "Irancell theory." ECF No. 173. The MTN Defendants argue that amendment is

---

[1] Plaintiffs include family members of victims killed in terrorist attacks. ECF No. 82 ¶ 17. Defendants are: Black & Veatch Special Projects Corporation; Centerra Group, LLC; DAI Global LLC; Environmental Chemical Corporation; G4S Risk Management Limited; G4S Holdings International (AG) Limited; Janus Global Operations LLC; Louis Berger Group, Inc.; Louis Berger International, Inc.; Louis Berger Group, Inc./Black & Veatch Special Projects Corporation Joint Venture; MTN Group Limited; MTN (Dubai) Limited; MTN Afghanistan; International Relief and Development, Inc.; Blumont, Inc.; Blumont Global Development, Inc.; and Chemonics International, Inc. *Id.* ¶¶ 18-34.

improper under Federal Rule of Civil Procedure 15 because Plaintiffs unduly delayed in asserting this theory, that delay prejudices the MTN Defendants, and the new claims are time-barred as to most Plaintiffs and do not relate back to the original complaint. *Id.* at 2-3. For the reasons explained below, the court finds that amendment is in the interests of justice under Rule 15. The court therefore **GRANTS** Plaintiffs' motion for leave to file a Second Amended Complaint.

### I. Procedural Background

The procedural history of this case is complex. Plaintiffs filed their complaint on December 27, 2019. ECF No. 1. All Defendants moved to dismiss. ECF Nos. 71-78. Plaintiffs amended their complaint as a matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), filing their First Amended Complaint on June 5, 2020. ECF No. 82. All Defendants again moved to dismiss, arguing (among other things) that Plaintiffs had failed to state a claim under the ATA. ECF Nos. 102-111. The MTN Defendants also moved to dismiss for lack of personal jurisdiction. ECF No. 102 at 13-15. Plaintiffs filed oppositions, ECF Nos. 117-119, and Defendants filed replies, ECF Nos. 123-127, 130-135.

The court referred the case to Magistrate Judge Zia M. Faruqui for full case management.[2] *See* July 20, 2020 & Sept. 14, 2020 Minute Orders. On July 30, 2021, Judge Faruqui issued a sixty-page Report and Recommendation ("R&R"), recommending that the court grant Defendants' motions to dismiss. ECF No. 142 at 1-2. Drawing on a recent district court decision in an analogous case, *Atchley v. AstraZeneca UK Ltd.*, 474 F. Supp. 3d 194 (D.D.C. 2020), Judge Faruqui concluded that Plaintiffs had failed to plausibly allege either primary or secondary liability under the ATA. *Id.* at 50, 60. A defendant is primarily (or, directly) liable under the ATA if it

---

[2] The court initially referred the case to Magistrate Judge G. Michael Harvey, and later reassigned the case to Magistrate Judge Faruqui. *See* July 20, 2020 & Sept. 14, 2020 Minute Orders.

commits an act of terrorism and is secondarily liable if it aids and abets an act of terrorism. *Id.* at 33-34; *see* 18 U.S.C. § 2333(a), (d)(2). Judge Faruqui also determined that the court lacked personal jurisdiction over the MTN Defendants because they did not "expressly aim[]" their conduct at the United States or "purposefully avail" themselves of the benefits of the United States. ECF No. 142 at 22-27.

Ten days after the R&R was issued, Plaintiffs moved to stay the case pending the D.C. Circuit's review of *Atchley*, 474 F. Supp. 3d 194. ECF No. 144. The district court granted the stay over Defendants' objections, "in view of the R&R's heavy reliance on the trial court's decision in *Atchley*," and "because the D.C. Circuit's decision in *Atchley* will likely 'narrow the issues in the pending case[] and assist in the determination of the questions of law involved.'" Aug. 26, 2021 Minute Order (quoting *Landis v. North Am. Co.*, 299 U.S. 248, 253 (1936)).

In January 2022, the D.C. Circuit reversed the district court's decision in *Atchley*. 22 F.4th 204 (D.C. Cir. 2022). In February 2023, that court denied rehearing en banc. *Atchley v. AstraZeneca UK Ltd.*, No. 20-7077, 2023 WL 1479424 (D.C. Cir. Feb. 2, 2023).

In May 2023, the U.S. Supreme Court decided another case concerning the ATA, *Twitter, Inc. v. Taamneh*, 598 U.S. 471 (2023). A unanimous Court held that social media companies could not be held secondarily liable under the ATA for their failure to remove ISIS content from their platforms. *Id.* at 477-78.

In June 2023, the *Atchley* defendants petitioned the Supreme Court for certiorari. *AstraZeneca UK Ltd. v. Atchley*, *petition for cert. pending*, No. 23-9 (filed June 30, 2023). The petition remains pending. *Id.*

## II.     Proposed Second Amended Complaint

In light of the shifting legal landscape, Plaintiffs now seek to file a Second Amended Complaint. ECF No. 171. Their request is, for the most part, uncontroversial. No Defendant takes issue with Plaintiffs' requests to:

- "drop[] Plaintiffs' direct-liability claims (Counts One through Four) against all Defendants except the MTN Defendants";

- "drop[] claims brought by some Plaintiffs who voluntarily dismissed their claims";

- "correct certain details—like attack dates or geographies, or biographical information" for certain Plaintiffs;

- "modestly refine[] Plaintiffs' . . . allegations about MTN's protection payments and tower shutdowns";

- "make[] limited changes to the broader protection-payment allegations to make . . . clear[] that Defendants' conduct is sufficiently 'culpable' under *Twitter*, 598 U.S. at 490"; and

- "supplement[] Plaintiffs' allegations about the roles played by al-Qaeda and the Haqqani Network in Plaintiffs' attacks."

*Id.* at 4-7.

The MTN Defendants object to one addition to the proposed Second Amended Complaint: the "Irancell theory." ECF No. 173 at 1-2. The Irancell theory alleges that MTN provided support to the Iranian Revolutionary Guards Corps ("IRGC"), a foreign terrorist organization; that the IRGC armed and financed the Taliban; and that the Taliban in turn carried out the attacks against Plaintiffs. ECF No. 171-3 ¶¶ 364-370, 2549, 2556. Counts One and Two of the proposed Second Amended Complaint allege that the MTN Defendants are directly liable under the ATA because they "provided material support to the Taliban and/or the Haqqani Network . . . by . . . entering a security agreement with and procuring communications equipment for the IRGC." *Id.* ¶ 2549; *see id.* ¶ 2556. Counts Four and Five of the proposed Second Amended Complaint allege that the

MTN Defendants are secondarily liable under the ATA because they "aided and abetted and knowingly provided substantial assistance to the Taliban's [and the Haqqani Network's] attacks on Plaintiffs . . . by entering a security agreement with and procuring equipment for the IRGC." *Id.* ¶ 2575; *see id.* ¶ 2587.

### III.     Legal Standard

Pursuant to Federal Rule of Civil Procedure 15, a party may amend its pleading once as a matter of course, and thereafter "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a).  The court should freely grant such leave "when justice so requires." *Id.*  "[T]he grant or denial of leave to amend is committed to a district court's discretion." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996).  However, "it is an abuse of discretion to deny leave to amend unless there is sufficient reason, such as 'undue delay, bad faith or dilatory motive . . . repeated failure to cure deficiencies by [previous] amendments . . . [or] futility of amendment.'" *Id.* (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  "Consideration of whether delay is undue . . . should generally take into account the actions of other parties and the possibility of any resulting prejudice." *Atchinson v. District of Columbia*, 73 F.3d 418, 426 (D.C. Cir. 1996).  "If the district court denies leave [to amend], it must state its reasons." *Barkley v. U.S. Marshals Serv. ex rel. Hylton*, 766 F.3d 25, 38 (D.C. Cir. 2014).

Even if an amendment is permitted under Rule 15(a), "an amendment adding a new ground for relief to the complaint must contend with the applicable statute of limitations." *Jones v. Bernanke*, 557 F.3d 670, 674 (D.C. Cir. 2009).  "In limited circumstances, Rule 15(c) saves an otherwise untimely amendment by deeming it to 'relate back' to the timely-filed claims the plaintiff alleged in the original complaint." *Id.*  An amendment relates back if it "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set

5

out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). An amendment does not relate back "when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle v. Felix*, 545 U.S. 644, 650 (2005). The key inquiry is "whether the original complaint adequately notified the defendants of the basis for liability the plaintiffs would later advance in the amended complaint." *Meijer, Inc. v. Biovail Corp.*, 533 F.3d 857, 866 (D.C. Cir. 2008).

## IV. Discussion

The MTN Defendants argue that Plaintiffs' motion to amend the complaint to add the Irancell claims is improper under Rule 15. First, the MTN Defendants argue that amendment is improper under Rule 15(a) because Plaintiffs have unduly delayed in advancing this new theory of liability. ECF No. 173 at 2-3. The MTN Defendants contend that undue delay alone, without prejudice, is sufficient to deny leave to amend. *Id.* In the alternative, the MTN Defendants argue that they are prejudiced by Plaintiffs' delay, and the court should therefore deny leave to amend. *Id.* Second, the MTN Defendants argue that amendment is improper because the Irancell claims are time-barred as to many Plaintiffs and do not relate back under Rule 15(c). *Id.*

While Plaintiffs did delay in asserting these new claims, the court concludes that this delay does not prejudice the MTN Defendants and Rule 15(a) therefore permits amendment. The court further concludes that, because the statute of limitations has not run on Plaintiffs' secondary liability claims against the MTN Defendants, those claims may proceed as to all Plaintiffs. Finally, although the statute of limitations may have run on some Plaintiffs' direct liability claims against the MTN Defendants, they relate back to the First Amended Complaint under Rule 15(c).

### A. Rule 15(a)

Courts have found undue delay where a party proffers a new theory of liability that it could have advanced earlier. *See Anderson v. USAir, Inc.*, 818 F.2d 49, 57 (D.C. Cir. 1987) (denying

6

leave to amend where new theories of liability "were based on facts known prior to the completion of discovery"); *Onyewuchi v. Gonzalez*, 267 F.R.D. 417, 420-21 (D.D.C. 2010) (finding that "[l]eave to amend is properly denied when the plaintiff was aware of the information underlying the proposed amendment long before moving for leave to amend the complaint" and collecting relevant cases). The MTN Defendants point out, and Plaintiffs do not contest, that MTN's investment in Irancell has been "public knowledge" since 2005 and "w[as] publicized at least by 2012" in a complaint filed in this court. ECF No. 173 at 15-16; *see* ECF No. 1, *Turkcell Iletisim Hizmetleri A.S. v. MTN Grp.*, No. 12-CV-479 (D.D.C. Mar. 28, 2012). In the MTN Defendants' view, Plaintiffs were aware of the facts underlying the Irancell claims at least seven years before they filed this lawsuit in 2019 but delayed advancing those claims until November 2023.[3]

The MTN Defendants argue that where a party unduly delays in advancing a new theory of liability, the court should deny leave to amend—even if there is no prejudice to the opposing party. ECF No. 173 at 2-3. Plaintiffs disagree, arguing that the court must find both undue delay and prejudice to deny leave to amend. ECF No. 174 at 9-10. The D.C. Circuit has held that "[c]onsideration of whether delay is undue . . . should generally take into account . . . the possibility of any resulting prejudice." *Atchinson*, 73 F.3d at 426. Courts have even deemed

---

[3] The MTN Defendants further argue that Plaintiffs waited to advance their Irancell claims until they received a favorable decision in *Zobay v. MTN Grp. Ltd.*, No. 21-CV-3503, 2023 WL 6304961 (E.D.N.Y. Sept. 28, 2023). ECF No. 173 at 18. There, the court found that plaintiffs had sufficiently pleaded that MTN aided and abetted terrorist attacks in Afghanistan and Iran by investing in Irancell. *Zobay*, 2023 WL 6304961, at *21-32. While the MTN Defendants describe Plaintiffs' delay as "gamesmanship," they do not allege—and the court does not find—that Plaintiffs acted in bad faith. ECF No. 173 at 18. Instead, Plaintiffs are merely seeking to strategically take advantage of new, favorable case law, which is unsurprising given the significant disruptions to ATA case law since 2019. *See Petworth Holdings, LLC v. Bowser*, 333 F.R.D. 297, 299-300 (D.D.C. 2019) (granting leave to add a new claim and new defendant in light of developments in the relevant case law, especially given the "jumbled [legal] landscape" in which plaintiffs filed their initial complaint).

prejudice "the touchstone for the denial of leave to amend." *In re Vitamins Antitrust Litig.*, 217 F.R.D. 30, 32 (D.D.C. 2003) (citing *Heyl & Patterson Int'l, Inc. v. F. D. Rich Hous. of Virgin Islands, Inc.*, 663 F.2d 419, 425 (3d Cir. 1981)); *see Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 841 (8th Cir. 2004) ("Delay alone is not enough to deny a motion to amend; prejudice to the nonmovant must also be shown."); *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 379 (4th Cir. 2012) ("[D]elay alone 'is an insufficient reason to deny a motion to amend.'" (quoting *Matrix Cap. Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 193 (4th Cir. 2009))). In other words: undue delay alone is generally not dispositive; the court should also consider whether the opposing party has been harmed by the delay.

In arguing that undue delay alone is sufficient, the MTN Defendants rely on the D.C. Circuit's recent, unpublished decision in *Daugherty v. Sheer*, No. 22-5103, 2023 WL 6380539 (D.C. Cir. Oct. 2, 2023) (per curiam). ECF No. 173 at 10-11. In *Daugherty*, the district court denied a motion for leave to amend that was "exceptionally tardy"—plaintiffs had sought leave to amend "more than six years after first filing their complaint, 41 months after [the D.C. Circuit] issued its mandate on the first appeal, 34 months after the Supreme Court denied certiorari, and 18 months after the deadline they themselves had proposed for . . . amending their complaint." *Id.* at *2. Plaintiffs appealed, arguing that the district court's denial was an abuse of discretion because the court had found undue delay but made no finding of actual prejudice. *Id.* at *3. The D.C. Circuit affirmed the district court's denial, holding that plaintiffs sought "to add not just new 'facts and evidence' in their amended complaint . . . but also a whole new defendant," and that "[t]his court has presumed prejudice under such circumstances." *Id.* The court went on to explain that "even if the district court did not explicitly mention prejudice to the defendants,

8

allowing such an extreme delay in a qualified-immunity case . . . would result in prejudice here." *Id.* at *4.

The *Daugherty* court recognized that previous decisions "left open the question of whether prejudice 'is *always* required' when a district court rejects a motion to amend" on the basis of undue delay. *Id.* (quoting *Mowrer v. Dep't of Transp.*, 14 F.4th 723, 733 (D.C. Cir. 2021)). The MTN Defendants imply that *Daugherty* answered that question in Defendants' favor. ECF No. 173 at 10-11. But *Daugherty* is an unpublished opinion, and "a panel's decision to issue an unpublished disposition means that the panel sees no precedential value in that disposition." D.C. Cir. R. 36(e)(2). It thus seems unlikely that the D.C. Circuit was resolving an open legal question through its unpublished, nonprecedential opinion in *Daugherty*. Instead, *Daugherty* is best read as another case in which the court presumed prejudice to the defendants based on a tardy attempt to amend. 2023 WL 6380539, at *3.[4]

The court therefore deems it appropriate to consider prejudice, and it finds none here. The MTN Defendants argue that they are prejudiced by Plaintiffs' delay because, if Plaintiffs are allowed to include their Irancell claims, the MTN Defendants will be "forc[ed] to brief yet another complex motion to dismiss." ECF No. 173 at 19. But the MTN Defendants will have to file a new motion to dismiss regardless, because they have lodged only a partial objection to Plaintiffs' motion for leave to file a Second Amended Complaint. *Id.* at 3 n.2. It is difficult to say that requiring a party to do something it would have to do anyway constitutes prejudice.

---

[4] And even if—as the MTN Defendants believe—a prejudice finding is not strictly necessary, nothing in *Daugherty* suggests that the trial court *abuses* its discretion by considering prejudice. *See Firestone*, 76 F.3d at 1208 ("[T]he grant or denial of leave to amend is committed to a district court's discretion.").

9

To be sure, the court is cognizant of the fact that this litigation has already gone on for four years. Under different circumstances—after the conclusion of discovery or on the eve of trial, for example—a court might well exercise its discretion to deny a late-breaking amendment. *Compare Atchinson*, 73 F.3d at 427 (holding that the district court did not abuse its discretion by denying a motion for leave to amend "on the eve of trial, when discovery was complete"), *with M.K. v. Tenet*, 216 F.R.D. 133, 140 (D.D.C. 2002) (finding that it would "defy logic to deny the plaintiffs an opportunity to amend the complaint" because discovery had not begun). But because of this case's unusual procedural posture—and through no fault of either party—it is still only early days for Rule 15 purposes. *See Shea v. Clinton*, 288 F.R.D. 1, *6-8 (D.D.C. 2012) (allowing party to amend answer ten years into litigation where the state of the relevant law was in flux, the case had been held in abeyance pending a related decision by the Supreme Court, and discovery had not yet begun). Because Plaintiffs' Second Amended Complaint will functionally reset the case, regardless of the precise contours of its claims, the court finds that the MTN Defendants are not prejudiced by Plaintiffs' delay.

The court therefore finds that it is in the interest of justice to grant leave to amend pursuant to Rule 15(a).

### B.   Timeliness and Rule 15(c)

The MTN Defendants argue that Plaintiffs' motion to amend should be denied because the Irancell claims are untimely and do not relate back under Rule 15(c).[5] The court finds that the

---

[5] Plaintiffs claim that the MTN Defendants waived this argument when they stated during a recent hearing that they did not plan to challenge amendment on futility grounds at this stage of litigation. ECF No. 174 at 11; *see* Oct. 10, 2023 Hr'g Tr. 17:1-14 ("[T]here may be futility grounds why this amendment would fail, and we're fine reserving that until later if the motion were to be granted."). The court declines to construe an off-the-cuff statement made during a pre-motions hearing as a waiver. The MTN Defendants raised timeliness and relation back in their opposition, ECF No. 173, and there is therefore no waiver problem.

Irancell claims alleging secondary liability are not time-barred and may proceed, and that the Irancell claims alleging primary liability relate back under Rule 15(c).

### 1.  Statute of Limitations

The ATA's statute of limitations is ten years.  18 U.S.C. § 2335(a).  The MTN Defendants argue, and Plaintiffs do not contest, that ATA claims accrue at the time of injury.  ECF No. 173 at 21 n.7; *see Strauss v. Credit Lyonnais, S.A.*, No. 06-CV-702, 2007 WL 2296832, at *6 (E.D.N.Y. Aug. 6, 2007) (stating, in the context of an ATA claim, that "[n]ormally, a cause of action accrues on the date a party is injured").  The MTN Defendants also argue, and Plaintiffs do not contest, that the date Plaintiffs moved for leave to file a Second Amended Complaint is the operative date when assessing the statute of limitations.  ECF No. 173 at 21 (citing *Demissie v. Starbucks Corp. Off. & Headquarters*, 2014 WL 12799163, at *3 (D.D.C. July 31, 2014)).  Plaintiffs moved for leave to file a Second Amended Complaint on November 27, 2023.  ECF No. 171.  The MTN Defendants therefore argue that, for any Plaintiff injured before November 27, 2013 ("nearly 90% of Plaintiffs"), the statute of limitations has run.  ECF No. 173 at 3.

That is true of some of Plaintiffs' direct liability claims concerning Irancell; however, "Plaintiffs did not have an aiding-abetting cause of action until the Justice Against Sponsors of Terrorism Act created one in September 2016."  ECF No. 174 at 14; *see* Pub. L. No. 114-222, § 4, 130 Stat. 852, 854 (2016) (codified at 18 U.S.C. § 2333(d)(2)); *Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 277 (D.C. Cir. 2018).  A "limitations period commences when the plaintiff has 'a complete and present cause of action.'"  *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997) (quoting *Rawlings v. Ray*, 312 U.S. 96, 98 (1941)).  And "a cause of action does not become 'complete and present' for limitations purposes until the plaintiff can file suit and obtain relief."  *Id.*  Because Plaintiffs could not have filed their secondary liability claims until 2016, the ten-year statute of limitations on those claims has not run.  Plaintiffs

11

may proceed on the Irancell claims in Counts Four and Five of the proposed Second Amended Complaint.  *See* ECF No. 171-3 ¶¶ 2575, 2587.

### 2. Relation Back

For Plaintiffs injured before November 27, 2013, the statute of limitations has run on their direct liability claims based on the Irancell theory.[6]  The MTN Defendants claim that this is a basis to deny leave to amend, while Plaintiffs contend that the Irancell claims relate back under Rule 15(c).  ECF No. 173 at 21-23; ECF No. 174 at 11-14.

An amendment relates back if it "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B).  "[W]hile amendments that expand upon or clarify facts previously alleged will typically relate back, those that significantly alter the nature of a proceeding by injecting new and unanticipated claims are treated far more cautiously."  *United States v. Hicks*, 283 F.3d 380, 388 (D.C. Cir. 2002).  "The underlying question is whether the original complaint adequately notified the defendants of the basis for liability the plaintiffs would later advance in the amended complaint."  *Meijer*, 533 F.3d at 866.

The MTN Defendants argue that the Irancell theory cannot relate back under Rule 15(c) because it "is a brand-new theory of liability."  ECF No. 173 at 2.  It is true that the Irancell theory is "new": the First Amended Complaint alleged that the MTN Defendants' relationship with the IRGC *motivated* those defendants to help the Taliban and the Haqqani Network harm Americans and American interests in Afghanistan, while the proposed Second Amended Complaint alleges that the MTN Defendants' support for the IRGC *was itself* material support for the Taliban and the Haqqani Network.  ECF No. 82 ¶¶ 337, 342-46, 2571, 2578; ECF No. 171-3 ¶¶ 364-370, 2549,

---

[6] In other words: the Irancell component of Counts One and Two.

12

2556. But Rule 15(c) permits the assertion of new claims so long as "the 'factual underpinnings' of the new claim" appeared in the earlier pleading. *Brink v. XE Holding, LLC*, No. 11-CV-1733, 2023 WL 5846674, at *5 (D.D.C. Sept. 11, 2023) (quoting *Constr. Interior Sys., Inc. v. Donohoe Cos.*, 813 F. Supp. 29, 36 (D.D.C. 1992)); *see Slayton v. Am. Express Co.*, 460 F.3d 215, 227 (2d Cir. 2006) ("[I]n reviewing a Rule 15(c)(2)[7] relation back decision, we ask whether the facts provable under the amended complaint arose out of conduct alleged in the original complaint. If so, the amended complaint will relate back." (citation omitted)). "[T]he fact that an amendment changes the legal theory on which the action initially was brought is of no consequence if the factual situation upon which the action depends remains the same and has been brought to defendant's attention by the original pleading." *Hartley v. Dombrowski*, 744 F. Supp. 2d 328, 335 (D.D.C. 2010) (quoting 6A Charles Alan Wright, et al., *Federal Practice and Procedure* § 1497 (3d ed. 2010)). For Rule 15(c) purposes, it is the facts alleged, not the legal allegations made in the initial complaint, that put a defendant on notice of her potential liability. *See Mayle*, 545 U.S. at 664 ("So long as the original and amended [complaints] state claims that are tied to a common core of operative facts, relation back will be in order.").

To determine whether Plaintiffs' direct liability Irancell claims relate back under Rule 15(c), the court therefore looks to the facts alleged in the First Amended Complaint[8] to assess whether the MTN Defendants had "sufficient notice of the facts and claims giving rise to the proposed amendment." *Hicks*, 283 F.3d at 388. In their First Amended Complaint, Plaintiffs made

---

[7] Rule 15(c)(1)(B) was previously codified as Rule 15(c)(2). *See United States ex rel. Miller v. Bill Harbert Int'l Const., Inc.*, 608 F.3d 871, 878 (D.C. Cir. 2010).

[8] The court looks to the First Amended Complaint because it is where Plaintiffs first stated the majority of their allegations against the MTN Defendants.

multiple allegations concerning Irancell to substantiate their claim that MTN's relationship with the IRGC motivated the MTN Defendants to support the Taliban and the Haqqani Network:

- "In 2004, Iran had awarded a cellular-phone license to MTN's competitor, Turkcell. But MTN then engaged in a corrupt scheme to take the license away from Turkcell and enter the Iranian market itself. MTN's efforts were successful and led it to acquire a 49% stake in Irancell—a joint venture with an Iranian government-controlled consortium." ECF No. 82 ¶ 322.

- MTN "became the Iranian government's chief outside telecommunications partner. In that capacity, MTN helped Iran grow its cellular-phone sector and evade American sanctions, particularly by helping Iran acquire embargoed U.S.-made communications technology. According to 'documents and numerous interviews conducted by Reuters,' MTN specifically focused on 'acquiring embargoed products' for Iran's benefit." *Id.* ¶ 324.

- "MTN made at least two corrupt payments to government officials": "a $400,000 payment for the benefit of an Iranian government operative," and a payment "to South Africa's ambassador to Iran . . . [for] cooperation in helping MTN secure its equity interest in Irancell." *Id.* ¶¶ 326-27.

- "Throughout MTN's history, it has exploited the United States' absence to flout U.S. laws and take actions facially against the U.S. national interest," including by "pledg[ing] 'security and political cooperation' with the government of Iran," "assist[ing] Iran in circumventing American sanctions," and "rebuff[ing] U.S. pressure to exit the Iranian market." *Id.* ¶ 340.

- "MTN Group's support for Taliban attacks against U.S. citizens advanced the foreign-policy interests of MTN Group's most important business partner. . . . MTN Group negotiated MTN's 49% equity stake in Irancell—Iran's second-largest cell-phone company. . . . The companies that own Iran's 51% stake in Irancell—MTN's joint venture partners—are Iran Electronics Industries and the Mostazafan Foundation. Both are known fronts for the Iranian Revolutionary Guards Corps ("IRGC"). The United States has imposed sanctions on Iran Electronics Industries, and Mostazafan is directly controlled by Grand Ayatollah Khamenei. For those reasons, the U.S. State Department

14

- purportedly referred to Irancell (as published online) as being 'fully owned by the IRGC.'" *Id.* ¶ 342.

- "MTN Group depends on its partnership with the IRGC. As of 2012, Iran was MTN's fastest growing market and its third largest source of revenue overall. Today, Iran is MTN's second-biggest market by subscribers. MTN Group's financial incentive to satiate its IRGC partners has led it to take a number of illegal steps to assist the Iranian regime. MTN helped the IRGC install surveillance software to track its political enemies in Iran; helped the IRGC evade American sanctions; and—much like it did in Afghanistan—periodically shut down its transmission towers in Iran to stifle democratic protests against the Iranian regime. When pressed by journalists to condemn Iran's use of MTN's surveillance equipment, MTN's CEO declined and stated, 'What the [IRGC] decides to do with that equipment is not in our hands. We cannot say who they listen to and when.' As three South African investigative journalists summarized these acts in an informative headline, 'MTN [is] in bed with Iran's military.'" *Id.* ¶ 343.

- "The IRGC's global terrorist campaign against the United States has long included support for the Taliban. . . . As Pakistan's former Ambassador to the United States described, 'Iran has been supporting the Taliban with a view to inflict pain on the U.S. in Afghanistan. From Iran's point of view, Afghanistan is another battleground where they can cause damage to Americans.'" *Id.* ¶ 345.

- "MTN Group's agreement to aid the Taliban served the IRGC's agenda of inflicting pain on U.S. forces. It also fulfilled MTN Group's contractual obligation to engage in 'defensive, security and political cooperation' with its IRGC partner. . . . MTN's support for the Taliban did not merely grow its profits by saving on security costs; it also benefited MTN's business by inflicting harm on an enemy of MTN's most lucrative business partner." *Id.* ¶ 346.

These factual allegations put the MTN Defendants on notice that Plaintiffs considered their relationship with Irancell to be directly connected to the attacks in Afghanistan. Plaintiffs' claim in the proposed Second Amended Complaint—that the MTN Defendants "provided material support to the Taliban and/or the Haqqani Network . . . by . . . entering a security agreement with

15

and procuring communications equipment for the IRGC," ECF No. 171-3 ¶ 2549; *see id.* ¶ 2556—is nothing more than a "natural offshoot" of what has already been alleged, *Slayton*, 460 F.3d at 228 (quoting *In re Chaus Sec. Litig.*, 801 F. Supp. 1257, 1264 (S.D.N.Y. 1992)).  And while the proposed Second Amended Complaint contains additional facts specific to the MTN Defendants' involvement with Iran, these merely amplify the factual allegations made in the First Amended Complaint.  *See Hicks*, 283 F.3d at 388 (noting that an amendment relates back if it "add[s] to or "amplif[ies] the facts already alleged").  For example, the proposed Second Amended Complaint includes an allegation that the MTN Defendants "procur[ed] millions of dollars of U.S. telecommunications and computing equipment for the Taliban's chief international sponsor, the IRGC," ECF No. 171-3 ¶ 371, but this is simply a more specific version of paragraph 324 of the First Amended Complaint, which alleges that MTN helped Iran "acquire embargoed U.S.-made communications technology," ECF No. 82 ¶ 324.  Similarly, the allegation in the proposed Second Amended Complaint that the MTN Defendants used "the U.S. financial system to facilitate the $400,000 bribe it paid in connection with its security agreement with the IRGC," ECF No. 171-3 ¶ 372, merely provides additional factual support for the allegation about the same $400,000 bribe made in paragraph 326 of the First Amended Complaint, ECF No. 82 ¶ 326.

"'[W]hen a suit is filed . . . [the] defendant knows that the whole transaction described in it will be fully sifted, by amendment if need be, and that the form of the action or the relief prayed or the law relied on will not be confined to their first statement." *Hartley*, 744 F. Supp. 2d at 335 (quoting *Barthel v. Stamm*, 145 F.2d 487, 491 (5th Cir. 1944)); *see Tiller v. Atl. Coast Line R.R. Co.*, 323 U.S. 574, 580-81 (1945) (explaining that a new claim, based on a new legal theory, related back because both the old and new claims "related to the same general conduct, transaction and occurrence which involved the death of the deceased. . . .  The cause of action now, as it was in

16

the beginning, is the same—it is a suit to recover damages for the alleged wrongful death of the deceased."). Because the First Amended Complaint put the MTN Defendants on notice of the operative facts of Plaintiffs' Irancell claims, the court concludes that the direct liability Irancell claims in Counts One and Two of the proposed Second Amended Complaint relate back to the First Amended Complaint under Rule 15(c).[9]

## V. Conclusion

For the foregoing reasons, it is hereby **ORDERED** that Plaintiffs' Motion for Leave to File a Second Amended Complaint, ECF No. 171, is **GRANTED**, and the Clerk of Court shall docket ECF No. 171-1 as Plaintiff's Second Amended Complaint;

It is further **ORDERED** that, in light of this Order, Defendants' motions to dismiss the First Amended Complaint, ECF Nos. 102 to 111, are **DENIED** as moot, and the Magistrate Judge's Report and Recommendation, ECF No. 142, is **VACATED** as moot; and

It is further **ORDERED** that this case is **STAYED** pending resolution of the petition for certiorari in *AstraZeneca UK Ltd. v. Atchley*, No. 23-9 (filed June 30, 2023). *See* Jan. 16, 2024 Minute Order; ECF No. 175 at 2-3 (parties' joint status report deferring to the court on whether to issue a stay). The parties shall file a joint status report proposing a schedule to govern future proceedings as follows:

- If the Supreme Court denies certiorari in *Atchley*, within fourteen days of the order denying certiorari;

---

[9] Even if the court had concluded that the Irancell components of Counts One and Two did not relate back, that would not be a basis to deny leave to amend. As the MTN Defendants acknowledge, the claims are timely as to some Plaintiffs, ECF No. 173 at 22, and any specific statute-of-limitations arguments targeted at particular plaintiffs would be better presented in a motion to dismiss, *see Firestone*, 76 F.3d at 1209-10.

- If the Supreme Court grants, vacates, and remands *Atchley*, within fourteen days of the D.C. Circuit's post-remand mandate;

- If the Supreme Court grants plenary review in *Atchley*, within fourteen days of the Supreme Court's merits decision.

**SO ORDERED**.

LOREN L. ALIKHAN
United States District Judge

Date: March 28, 2024