**THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AUGUST CABRERA, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>BLACK & VEATCH SPECIAL PROJECTS CORPORATION, *et al.*,<br><br>*Defendants*. | No. 1:19-cv-03833-LLA<br><br>Hon. Loren L. AliKhan |

**MEMORANDUM OF LAW IN SUPPORT OF THE CONSTITUTIONALITY OF JASTA**

The United States of America (the United States or the Government) respectfully submits this memorandum of law defending the constitutionality of the Justice Against Sponsors of Terrorism Act (JASTA), Pub. L. No. 114-222, 130 Stat. 852 (2016), which Defendants in these actions have challenged. The United States has already noticed its participation in this suit to defend JASTA. *See* ECF No. 233.

**STATUTORY BACKGROUND**

In 1992, Congress passed the Anti-Terrorism Act (ATA), which created a cause of action for any United States national harmed by "an act of international terrorism." *See* Pub. L. 102-572, tit. X, § 1003(a)(4), 106 Stat. 4522 (codified in part at 18 U.S.C. § 2333). Congress had already provided "extraterritorial criminal jurisdiction for acts of international terrorism" in 1986 and "believe[d] that there [was] a need for a companion civil legal cause of action for American victims of terrorism." H.R. Rep. 102-1040, at 5 (1992). Congress wanted to "open[] the courthouse door to victims of international terrorism" by "extend[ing] the same jurisdictional structure that undergirds the reach of American criminal law to the civil remedies that it defines." S. Rep. 102-

342, at 45 (1992). "[I]nternational terrorism" is defined as activities that (1) "involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State"; (2) "appear to be intended" to coerce civilians, influence a government's policy by intimidation or coercion, or affect a government's conduct by mass destruction, assassination, or kidnapping; and (3) "occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum." *See* 18 U.S.C. § 2331(1). In short, a U.S national harmed by terrorist attacks which occur abroad can sue under the ATA's cause of action.

Before 2016, the cause of action codified in 18 U.S.C. § 2333 made no explicit reference to aiding-and-abetting liability. Multiple courts ruled that Congress's silence on this point foreclosed a plaintiff from asserting an aiding-and-abetting theory under that cause of action. *See Rothstein v. UBS AG*, 708 F.3d 82, 97–98 (2d Cir. 2013); *Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685, 689 (7th Cir. 2008); *see also Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 277–80 (D.C. Cir. 2018) (analyzing the ATA as it existed before JASTA). These courts noted that because Congress had expressly referenced aiding-and-abetting liability in other provisions of the ATA, a failure to provide for the same theory of liability in § 2333 meant that no such liability could be asserted under the cause of action codified there. *See, e.g.*, *Rothstein*, 708 F.3d at 97–98 (citing statutory sections).

Congress responded in 2016 by enacting JASTA. *See* Pub. L. No. 114-222, 130 Stat. 852 (2016). In section 2 of the Act, titled "Findings and Purpose," Congress said "[i]t [wa]s necessary to recognize the substantive causes of action for aiding and abetting and conspiracy liability under

[18 U.S.C. § 2333]." *Id.* § 2(a)(4), 130 Stat. at 852. Congress listed among its findings that foreign terrorist organizations will "raise significant funds outside of the United States for conduct directed and targeted at the United States" and that those who "knowingly or recklessly contribute material support . . . to persons or organizations that pose a significant risk of committing acts of terrorism that threaten the security of nationals of the United States . . . should reasonably anticipate being brought to court in the United States to answer for such activities." *Id.* § 2(a)(3), (a)(6), 130 Stat. at 852. And although the ATA's cause of action applies to "act[s] of *international* terrorism," 18 U.S.C. § 2333(a) (emphasis added), Congress noted in JASTA "a vital interest in providing persons and entities injured as a result of terrorist attacks committed *within the United States* with full access to the court system in order to pursue civil claims" against those who "have knowingly or recklessly provided material support or resources, directly or indirectly, to the persons or organizations responsible for their injuries," JASTA § 2(a)(7), 130 Stat. at 852–53 (emphasis added). Under a different subsection titled "Purpose," Congress stated JASTA's purpose as "provid[ing] civil litigants with the broadest possible basis . . . to seek relief" against anyone providing material support, "directly or indirectly," to those perpetrating terrorist attacks in the United States. *Id.* § 2(b), 130 Stat. at 853.

Consistent with those findings and purposes, Congress added a new subsection to 18 U.S.C. § 2333 providing that, under the ATA's cause of action for U.S. nationals injured by acts of international terrorism, "liability may be asserted as to any person who aids and abets . . . the person who committed such an act of international terrorism." *Id.* § 4(a), 130 Stat. at 854. That new subsection was codified at 18 U.S.C. § 2333(d). Congress made clear that all amendments to existing law made by JASTA would apply to any civil action "pending on, or commenced on or after, the date of [JASTA's] enactment . . . and arising out of an injury to a person, property, or

business on or after September 11, 2001." *Id.* § 7(1)-(2), 130 Stat. at 855. In short, aiding and abetting liability could be asserted for terrorist events that occurred after 9/11.

**PROCEDURAL BACKGROUND**

On July 24, 2026, Defendants moved to dismiss the Second Amended Complaint. *See* ECF No. 218-1 (MTD). In that motion, Defendants made multiple arguments—including that Plaintiffs have failed to state a secondary-liability claim against each of the Defendants, *see id.* at 22–150, and that the Court lacks personal jurisdiction over certain Defendants, *see id.* at 171–86. But Defendants also argued that Congress "acted with punitive intent" when it created secondary liability under the ATA in JASTA, *id.* at 154, such that JASTA cannot be applied retroactively, *i.e.*, to actions occurring before JASTA's enactment, "without violating the *Ex Post Facto* Clause and the Fifth Amendment's due process protections," *id.* at 155. Defendants gave three reasons why JASTA is punitive. *First*, the ATA's treble damages provision is "a powerful indication of punitive intent." *Id.* at 157. *Second*, the "statutory text and structure" reflects JASTA's punitive intent "in several ways," including JASTA's placement in Title 18 and the bill's "formal title." *Id.* at 157–58. And *third*, JASTA's "[l]egislative history confirms the punitive intent that is" supposedly "apparent on the face of the plain text." *Id.* at 158.

On the same day that Defendants filed their motion to dismiss, they noticed their constitutional challenge pursuant to Federal Rule of Civil Procedure 5.1, *see* ECF No. 219, and the Court certified that challenge on July 29, *see* ECF No. 220. The United States notified the Court on October 26 that it would participate in this action to defend JASTA and that it would submit this Memorandum defending JASTA's constitutionality. *See* ECF No. 233.

## DISCUSSION

### I. JASTA Does Not Violate the Due Process Clause

The Due Process Clause (and the Ex Post Facto Clause) supports the presumption that statutes should apply only prospectively. The "interests in fair notice and repose" protected by the Due Process Clause "may be compromised by retroactive legislation[.]" *Landgraf v. USI Film Prods.*, 511 U.S. 244, 266 (1994). The Ex Post Facto Clause similarly supports prospective legislation by "flatly prohibit[ing] retroactive application of penal legislation." *Id.* However, although "retroactivity is not favored in the law," statutes can apply retroactively when Congress has "made clear its intent" that its enactment has retroactive application. *Id.* at 264, 270 (citation modified). Such is the case here—Congress stated its intent that the secondary-liability provisions added by JASTA should apply retroactively. *See* JASTA § 7, 130 Stat. at 855 (applying the amendments made by JASTA to injuries suffered "on or after September 11, 2001"). This is not a case where the Court must determine retroactivity from congressional silence.

The question, then, is whether Congress acted with a punitive intent when it enacted JASTA. The Supreme Court has cautioned against "approv[ing] the retrospective imposition of liability on any theory of deterrence or blameworthiness." *Usery v. Turner Elkhorn Min. Co.*, 428 U.S. 1, 17–18 (1976) (citations omitted). At the same time, retroactive application is permissible when "justified by a rational legislative purpose." *Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 730 (1984) (*PBGC*); *see also United States v. Sperry Corp.*, 493 U.S. 52, 64 (1989) (same).

Based on Supreme Court precedent, compensation for injuries is a rational purpose that can justify retroactive application of a statute. In *Usery*, the Court upheld a law that required mining operators to compensate the work-related disabilities of miners that had stopped working

before Congress passed the law. *See* 428 U.S. at 15. The Court concluded that this scheme rationally "spread the costs of the employees' disabilities to those who have profited from the fruits of their labor." *Id.* at 18. Similarly, the Court in *General Motors Corp. v. Romein* analyzed a statute that required car companies to refund millions of dollars to disabled employees that had been injured before a certain date and from whom the companies had sought reimbursement of benefit payments. *See* 503 U.S. 181, 184–86 (1992). The Court ruled that the retroactive statute was rational because it gave "workers injured before 1982 their full benefits," but "not the greater increases given to subsequently injured workers." *Id.* at 191.

Like the laws in those cases, JASTA is compensatory. Congress made this clear at enactment, stating that JASTA's legislative purpose was to "provide civil litigants with the broadest possible basis . . . to seek relief against" those who perpetrate and support terrorism. JASTA § 2(b), 130 Stat. at 853. Congress also acknowledged the interest of the United States to provide those injured a legal avenue "to pursue civil claims" against those "responsible for their injuries." *Id.* § 2(a)(7), 130 Stat. at 853. This is not only a "rational legislative purpose," *PBGC*, 467 U.S. at 730, it is "an urgent objective of the highest order," *Fuld v. Palestine Liberation Org.*, 606 U.S. 1, 20 (2025) ("The Federal Government, relatedly, has a strong interest in permitting American victims of international terror to pursue justice in domestic courts."). "Retroactive application to allow for secondary liability for attacks going back to September 11, 2001 serves this urgent objective." *Finan v. Lafarge S.A.*, 2025 WL 2504317, at *23 (E.D.N.Y. Aug. 29, 2025) (upholding JASTA's retroactivity against Due Process Clause challenge).

The ATA's treble-damages provision does not suggest otherwise. *Contra* MTD at 156–57. The Supreme Court has described almost identical treble-damages provisions as remedial, not punitive. Consider the Clayton Act, which provides treble damages to "[a]ny person who shall be

injured in his business or property by reason of anything forbidden in the antitrust laws" based on "the damages by him sustained." 15 U.S.C. § 15(a). The Supreme Court determined that provision, "which makes awards available only to injured parties, and measures the awards by a multiple of the injury actually proved, is designed primarily as a remedy." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 485–86 (1977). Similarly, the civil RICO statute allows a plaintiff to "recover threefold the damages he sustains" from RICO violations. 18 U.S.C. § 1964(c). The Supreme Court described that provision as "designed to remedy economic injury" because it "requires that a plaintiff show injury in his business or property by reason of a violation." *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 151 (1987). The ATA's treble-damages provision works in the same way. It limits recovery to those persons "injured in his or her person, property, or business" and measures recovery by the amount of damages that person sustained, multiplied by three. 18 U.S.C. § 2333(a); *see Brunswick*, 429 U.S. at 485–86. "[T]hese features indicate a compensatory purpose" not a punitive one. *Stansell v. Revolutionary Armed Forces of Colombia*, 2022 WL 17830551, at *4 (S.D.N.Y. Dec. 21, 2022) (considering the ATA).

Defendants cite another case in which the Supreme Court has described "[t]he very idea of treble damages" as "reveal[ing] an intent to punish past, and to deter future, unlawful conduct, not to ameliorate the liability of wrongdoers." *Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 639 (1981) (cited on MTD at 156). That pronouncement should not control, however, given that "the tipping point between payback and punishment" is "dependent on the workings of a particular statute." *Cook County v. United States ex rel. Chandler*, 538 U.S. 119, 130 (2003); *see also PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 405 (2003) ("Our cases have placed different statutory treble-damages provisions on different points along the spectrum between

purely compensatory and strictly punitive awards.”). This Court, then, must analyze the ATA’s unique provision.[1]

Just like the remedial treble-damages provisions in the Clayton Act and civil RICO, the ATA’s provision expressly limits recovery to victims for the injuries “he or she sustains.” 18 U.S.C. § 2333(a). As one court has noted, the ATA’s provision “incentiviz[es] [victims] to seek compensation for their injuries.” *Stansell*, 2022 WL 17830551, at *5. A damages provision like the ATA’s that is “intended to redress the concrete loss that the plaintiff has suffered,” is quintessentially compensatory. *Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 432 (2001); *see also* Restatement (Second) of Torts § 903 (A.L.I. Sep. 2025 update) (“‘Compensatory damages’ are the damages awarded *to a person* as compensation, indemnity or restitution for harm sustained by him.” (emphasis added)).

Moreover, that Congress might also have acted out of deterrence or punishment does not make this treble-damages provision punitive. “[S]tatutes can simultaneously have punitive, deterrent[,] and compensatory purposes.” *Stansell*, 2022 WL 17830551, at *5. Indeed, the Supreme Court has acknowledged the punitive and deterrent effects of the Clayton Act’s treble-damages provision, *see Am. Soc’y of Mech. Eng’rs, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 575 (1982), but has nonetheless described that provision as “designed primarily as a remedy,” *Brunswick*, 429 U.S. at 486.[2] In other words, a compensatory treble-damages provision is not

[1] Plaintiffs also cite the Supreme Court’s decision in *State Farm Mut. Auto. Ins. Co. v. Campbell*, where the Court discussed “a long legislative history . . . providing for sanctions of double, treble, or quadruple damages to deter and punish.” 538 U.S. 408, 425 (2003) (cited on MTD at 156). That case was not about retroactivity at all, but rather the size of a punitive damages award. *See id.* at 412 (“the question is whether, in the circumstances we shall recount, an award of $145 million in punitive damages . . . is excessive and in violation of the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States.”).

[2] For the same reason, the Supreme Court’s later description of treble damages in *Texas Industries* as “reveal[ing] an intent to punish past, and to deter future, unlawful conduct” must give way. 451

punitive even if it has a deterrent effect. *See Cook County*, 538 U.S. at 130 ("[I]t is important to realize that treble damages have a compensatory side, serving remedial purposes in addition to punitive objectives."). And the Supreme Court has acknowledged that providing treble damages improves the chance of compensation "by counterbalancing the difficulty of maintaining a private suit," thus "mak[ing] the remedy meaningful" for victims." *Brunswick*, 429 U.S. at 486 n.10 (citation omitted).

The same logic applies to the ATA, which limits treble damages to victims and pegs those damages to the injury those victims sustained. "[T]reble damages in the ATA . . . are aimed at victims," and are compensatory. *Stansell*, 2022 WL 17830551, at *5; *see also id.* at *6 (describing the ATA's treble-damages provision as a form of liquidated damages designed "to ensure adequate compensation of [] difficult-[to]-quantify losses" and to compensate plaintiffs for the "difficulty and delay" in recovering judgments that are frequently entered against absent defendants); Antiterrorism Act of 1990: Hearing on S. 2465 Before the Subcomm. on Cts. & Admin. Prac. of the S. Comm. on the Judiciary, 101st Cong. 34 (1990) (statement of Steven R. Valentine, Deputy Assistant Att'y Gen., Civil Division, U.S. Dep't of Justice) ("[The ATA] provides a federal forum for any national of the United States to seek compensation in the form of treble damages for injuries resulting from acts of international terrorism.").

Decisions from the D.C. Circuit and the Seventh Circuit do not change this analysis. Defendants cite a footnote in *Owens v. BNP Paribas, S.A.*, which says that "treble damages usually have a punitive aim." 897 F.3d 266, 270 n.2 (D.C. Cir. 2018) (cited by MTD at 156). But that

U.S. at 639. That case was also about the antitrust statutes, including the Clayton Act, and despite the Supreme Court's comment in *Texas Industries* about treble damages, the Court did not overrule or otherwise undermine its holding in *Brunswick* that the Clayton Act's treble-damages provision is remedial in nature.

footnote did not decide that the ATA's provision is punitive. Instead, the footnote first noted that several courts had interpreted § 2333 to require scienter and then disclaimed any impact of those holdings on the D.C. Circuit's appeal. *See id.* ("Whether this is right has no bearing on this appeal."). Similarly, the Seventh Circuit stated that treble damages "tend to have a punitive aim," but never said that the ATA's treble-damages provision has that aim. *Boim*, 549 F.3d at 692 (cited by MTD at 156). The issue in that case was the level of scienter required for civil liability under the ATA, *see id.*, not whether the treble-damages provision is punitive. "The court's objective was not to undertake a rigorous inquiry into the nature or purpose of ATA treble damages." *Stansell*, 2022 WL 17830551, at *6 (distinguishing *Boim*).

Defendants also cannot rely on the placement of the ATA in Title 18 to say that the ATA is punitive. *Contra* MTD at 157. Title 18 contains many provisions for compensatory civil liability, *see, e.g.*, 18 U.S.C. §§ 1595, 1964(c), and the ATA's placement does not change the nature of what the ATA provides. "The location and labels of a statutory provision do not by themselves transform a civil remedy into a criminal one." *Smith v. Doe*, 538 U.S. 84, 94 (2003). Defendants respond that placing the ATA in Title 18 is at least a "statutory sign of intent to punish," Reply at 73, ECF No. 228 (citation omitted), but that argument is substantially if not conclusively rebutted by Congress's placement of JASTA's secondary-liability regime in a section titled "*Civil* remedies." 18 U.S.C. § 2333 (emphasis added). Defendants also cannot use JASTA's formal title to "limit the plain meaning of [its] text," which is all about compensation. *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998) (citation omitted); *contra* MTD at 158 (invoking JASTA's title). And, in any event, JASTA's formal title does not just discuss deterrence. The full title is "An Act To deter terrorism, *provide justice for victims*, and for other purposes." JASTA, 130 Stat. at 852 (emphasis added). The full title therefore indicates Congress's compensatory purpose as set forth in the Act's

text. Defendants suggest otherwise by citing the title of one other congressional enactment with the word "justice" in its title and extrapolating that "Congress treats justice for victims as a criminal objective." Reply at 74. Such *ipse dixit* is hardly convincing, but in any event the argument holds no water here given JASTA's multiple references to "civil claims," "civil litigants," and "civil action[s]." JASTA §§ 2(a)(7), 2(b), 5(b), 7, 130 Stat. at 853–55.

As for Defendants' argument based on legislative history, *see* MTD at 158–59, Defendants cannot use snippets of that history to displace the legislative purpose that Congress wrote into JASTA's text. *See Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 436 (2019) ("Even those of us who sometimes consult legislative history will never allow it to be used to muddy the meaning of clear statutory language." (citation omitted)). Namely, to "provide civil litigants with the broadest possible basis . . . to seek relief against" those who perpetrate and support terrorism. JASTA § 2(b), 130 Stat. at 853. Congress also acknowledged the interest of the United States to provide those injured a legal avenue "to pursue civil claims" against those "responsible for their injuries." *Id.* § 2(a)(7), 130 Stat. at 853. Compensation, not punishment or deterrence, was "front and center" in JASTA. MTD at 45; *see also Smith*, 538 U.S. at 102 ("Any number of governmental programs might deter crime without imposing punishment.").

Defendants also argue that JASTA "piggy-backs civil remedies on criminal violations" and, on that basis, should be treated as a criminal and punitive statute "for retroactivity purposes." MTD at 157–58. But Congress enacted JASTA to provide a new cause of action for civil remedies, and those remedies are available whether or not the actual criminal is convicted. Indeed, nothing in JASTA's text requires a conviction before a defendant is secondarily liable. *Accord* Pls.' Opp'n to MTD at 132–33, ECF No. 223.

As a final argument, Defendants emphasize that aiding and abetting under JASTA "requires *culpable* participation" in "criminal wrongdoing." MTD at 158 (quoting *Twitter, Inc v. Taamneh*, 598 U.S. 471, 493 (2023)). The argument ignores that concepts of culpability are not limited to criminal provisions, and thus the mere presence of culpability does not create a punitive statute. Moreover, Defendants' main authority for this argument is *Twitter*, and that case does not support them. There, the Supreme Court specifically rejected arguments that would extend JASTA beyond "the typical limits on tort liability." *Id.* at 493–503; *see also Atchley v. AstraZeneca Uk Ltd.*, 164 F.4th 592, 608 (D.C. Cir. 2026) (rejecting argument that *Twitter* "read a specific intent requirement into the ATA"). Defendants therefore cannot read *Twitter* as establishing that JASTA is about only punishment or deterrence.

**II. JASTA Does Not Violate the Ex Post Facto Clause**

JASTA does not violate the Ex Post Facto Clause for many of the same reasons. Courts must first ascertain "whether the legislature meant the statute to establish civil proceedings." *Kansas v. Hendricks*, 521 U.S. 346, 361 (1997) (quotation marks omitted). If so, courts "ordinarily defer to the legislature's stated intent." *Id.* Courts "reject the legislature's manifest intent only where a party challenging the statute provides the clearest proof" that the statutory scheme is punitive. *Id.* (citation omitted).

Here, the clearest proof all points in the direction that Congress created a civil remedy in JASTA. As noted above, JASTA's regime of secondary liability does not depend on a criminal conviction nor even requires the existence of a criminal proceeding at all. That simple fact distinguishes this scheme from the one at issue in *Ellingburg v. United States*, which allowed a court to order restitution "only with respect to a criminal defendants and only after that defendant's

conviction of a qualifying crime." 607 U.S. 163, 166 (2026). Defendants' emphasis on *Ellingburg* throughout their briefs is therefore misplaced.

Indeed, Congress expressly enacted JASTA to "provide civil litigants" with greater access to the court system, JASTA § 2(b), 130 Stat. at 853, "in order to pursue civil claims" against supporters of terrorist attacks, *id.* § 2(a)(7), 130 Stat. at 852–53. This is plain from JASTA's placement of secondary liability in a statutory section titled "*Civil* remedies," 18 U.S.C. § 2333 (emphasis added), as well as from JASTA's express application "to any civil action" pending since September 11, 2001, JASTA § 7, 130 Stat. at 855. "[A] civil label is not always dispositive," *Kansas*, 521 U.S. at 361 (citations omitted), but in this instance the statutory text makes clear that JASTA has nothing to do with criminal law. Defendants' arguments to the contrary are largely the same arguments they make for why JASTA violates the Due Process Clause. Just as those arguments are insufficient to show that Congress's intent was to punish or deter, *see supra* § I, they are likewise insufficient to show by the "clearest proof" that JASTA imposes a criminal or penal sanction under the Ex Post Facto Clause. *Kansas*, 521 U.S. at 361.

## CONCLUSION

The Court should reject Defendants' constitutional challenge to JASTA for the reasons discussed above. The United States takes no position on any other legal issues in these cases.

Date: November 9, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ALEXANDER K. HAAS
Director
Civil Division, Federal Programs Branch

STEPHEN M. ELLIOTT
Assistant Director
Civil Division, Federal Programs Branch

*/s/ Christian Dibblee*
CHRISTIAN DIBBLEE (D.C. Bar No. 90002557)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Phone: (202) 353-5980
E-mail: christian.r.dibblee@usdoj.gov

*Counsel for the United States*